IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:09-CR-00001-M-2

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>BRUCE WAYNE MILLER,<br><br>    Defendant. | ORDER |

This matter comes before the court on the Defendant Bruce Wayne Miller's ("Miller") Motion for Compassionate Release [DE 219] and the United States' response in opposition to the motion (DE 223). Miller argues that if he were sentenced today, he would not be considered a career offender and his conviction under 18 U.S.C. 924(c) would require a shorter sentence; thus, the resulting sentence disparity constitutes an extraordinary and compelling reason warranting a sentence reduction. For the reasons that follow, Miller's motion is denied.

**I.**    **Background**

    A.    Procedural History

On January 8, 2009, the United States filed the operative eight-count indictment against Miller and his co-Defendants, alleging that Miller (1) knowingly robbed, and aided and abetted in the robbery of, a convenience store "by means of actual and threatened force, violence, and fear of injury," in violation of 18 U.S.C. §§ 1951 and 2 (Count Six); and (2) aiding and abetting the use and possession of a firearm during, in relation to, and in furtherance of the robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 (Count 7). DE 2. On December 2, 2009, a jury found Miller

guilty of these charges (DE 118). On March 9, 2010, the Honorable Malcolm J. Howard sentenced Miller to a total term of 324 months in prison (240 months on Count Six and 84 months on Count 7), followed by five years on supervised release. J., DE 128. Miller appealed his conviction, arguing that he was deprived of his Sixth Amendment right to compulsory process, but the Fourth Circuit Court of Appeals rejected his argument and affirmed the judgment. DE 144.

B.   Current Motion

Miller, through counsel, filed the current motion on January 25, 2023, asserting that he is entitled to a reduced sentence because (1) if he were sentenced today, he would not be subject to a Chapter 4 career offender enhancement and the jury verdict demonstrates that he would receive a 60-month, rather than an 84-month, sentence on his firearm charge and, therefore, his adjusted sentencing range would be 137 to 156 months, which, at the top, is less than half his imposed sentence of 324 months; (2) a sentence disparity exists between himself and his co-Defendant, George Blackwell (Miller's older brother); and (3) he has a job for which he has been repeatedly commended, has completed multiple programs and attended several seminars to improve himself, has been cited for only two infractions in more than thirteen years, and will have stable family support when released. DE 220. Attached to the present motion is a copy of Miller's request to the warden at FCI-Coleman for a sentence reduction, the warden's response, and a progress report dated December 9, 2022. *See* DE 220-1, 220-2, and 220-3.

The United States filed a response to Miller's motion on February 8, 2023. DE 223. The government contends that the Fourth Circuit's opinion in *United States v. Ferguson* forecloses Miller's request for a sentence reduction; alternatively, the Fourth Circuit's decision in *United States v. McCoy* is distinguishable and, thus, does not support Miller's request; Miller's health and any good conduct in prison do not constitute an extraordinary or compelling reason for release;

2

and Miller's release would be inconsistent with factors set forth in 18 U.S.C. § 3553(a). *See id.* The United States attached to its response copies of Miller's pertinent medical records and inmate data forms. DE 223-1, 224.

Thereafter, on November 1, 2023, Miller filed a notice of subsequently decided authority and identified the United States Sentencing Commission's amended policy statement at U.S.S.G. § 1B1.13 related to motions seeking relief under § 3582(c)(1)(A). DE 231. In reaching its determination not to exercise its discretion to reduce Miller's sentence, the court has considered all of the filed documents.

## II. Legal Standards

For a motion seeking relief under § 3582(c)(1)(A), a district court in its discretion may reduce a defendant's term of imprisonment if: (1) the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring such motion on the defendant's behalf *or* the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier; and (2) the court finds that extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i);[1] *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). In deciding to reduce a sentence based on extraordinary and compelling reasons, the court must consider the factors set forth in section 3553(a), to the extent applicable, and determine that a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331 (4th Cir.), *cert. denied*, 142 S. Ct. 383, 211 L. Ed. 2d 204 (2021).

---

[1] Alternative grounds for a sentence reduction, inapplicable here, are outlined in § 3582(c)(1)(A)(ii) (listing that the defendant be at least seventy years old, served at least thirty years in prison, and have a BOP determination that he is not a danger to the safety of any other person or the community).

3

In its 2021 manual,[2] the Sentencing Commission outlined a non-exhaustive list of circumstances that constitute extraordinary and compelling reasons for compassionate release. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)-(C) (U.S. Sent'g Comm'n 2021) (hereinafter "U.S.S.G.") (listing terminal illness; a condition from which a defendant is not expected to recover that substantially diminishes his ability to provide self-care within the correctional-facility environment; age 65 or older; and other listed requirements or enumerated family circumstances). Notably, this version of Section 1B1.13 pre-dates the enactment of the First Step Act, which amended Section 3582 to provide defendants with direct access to the courts. Consequently, the Fourth Circuit has found that "[t]he only policy statement that possibly could be 'applicable'" was Section 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (emphasis added); *see id.* at 281 ("What § 3582(c)(1)(A) requires is that sentence reductions be consistent with 'applicable policy statements.' And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[].'").

However, the Fourth Circuit has also recognized that Section 1B1.13, "though issued before Congress authorized defendant-filed motions, 'remains helpful guidance even when

---

[2] As set forth above, the United States Sentencing Commission recently adopted a new § 1B1.13 policy statement, which became effective on November 1, 2023. At least one district court in this circuit has applied the new statement, notwithstanding that the motion in that case was filed in February 2023. *See United States v. Penniegraft*, No. 1:08CR231-2, 2024 WL 328716, at *2 n.3 (M.D.N.C. Jan. 29, 2024) (finding that the new policy statement did not "adversely affect [defendant]'s avenues for relief"); *see also* USSG § 1B1.11(b)(1)-(2) (barring the use of the manual in effect on the date of sentencing if it would violate the *ex post facto* clause, and requiring application of manual "in its entirety"). In this case, the 2023 policy statement does not appear to narrow the range of possible extraordinary and compelling reasons; nevertheless, Defendant's motion was filed well before the new policy statement's effective date and, thus, the court will apply the 2021 version of the USSG manual in effect at the time of the motion's filing and will consider the full range of extraordinary and compelling reasons available under *McCoy*.

4

motions are filed by defendants'" for defining medical conditions that may serve as extraordinary and compelling reasons for a sentence reduction. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting *McCoy*, 981 F.3d at 282 n.7); *see also United States v. Hargrove*, 30 F.4th 189, 197-98 (4th Cir. 2022) (approving consideration of § 1B1.13, BOP Program Statement 5050.50, and other factors). Moreover, the appellate court has determined that "the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction." *United States v. Jenkins*, 22 F.4th 162, 169–70 (4th Cir. 2021); *see also McCoy*, 981 F.3d at 284 ("district courts are 'empowered ... to consider *any* extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted) (emphasis in original).

A defendant who seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that such relief is warranted. *United States v. Rashaad*, No. 3:01-CR-195-MOC, 2023 WL 2656566, at *3 (W.D.N.C. Mar. 27, 2023) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) and *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)). The court may deny a defendant's motion based on its consideration of the applicable 3553(a) factors, even if extraordinary and compelling circumstances exist. *See Kibble*, 992 F.3d at 331-32. Notably, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

### III. Analysis

Based on the requirements of § 3582(c)(1)(A), Miller's motion requires the court to consider (1) whether he exhausted his administrative remedies; (2) if so, whether extraordinary and compelling reason(s) exist warranting a reduction of his sentence; and (3) if so, what, if any,

5

sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors. The parties agree and the record reflects that Miller has exhausted his available administrative remedies.

A. <u>Extraordinary and Compelling Reason Under § 3582(c)(1)(A)</u>

Miller asserts that the significant sentence disparity between his actual sentence and the sentence he would receive today based on changes in the law constitutes an extraordinary and compelling reason for a sentence reduction. He also mentions the difficulties in serving a custodial sentence during the COVID-19 pandemic.

The United States counters first that the binding decision in *United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022) forecloses Miller's request. The court disagrees. In *Ferguson*, the court ruled that § 3582(c)(1)(A) cannot be used as a tool for attacking a sentence or conviction; rather, § 2255 is the exclusive means by which defendants may launch such attack. 55 F.4th at 270. The defendant in that case sought compassionate release under § 3582(c)(1)(A), arguing that the indictment was deficient, the government failed to inform him at arraignment of the correct penalty, the district court failed to instruct the jury properly, the sentencing guidelines range was computed improperly, and his trial counsel was ineffective in several respects. *Id.* at 266. The court found these arguments constituted attacks on the defendant's conviction and sentence, which could be raised only under § 2255. *Id.* at 272. Conversely, in this case, Miller argues that a significant sentence disparity exists due to changes in the law, not due to any failure or error in his case. *Ferguson* is inapplicable.

Next, the United States argues that the circumstances presented in *McCoy* are distinguishable from this case and, therefore, the court should not consider it in support of Miller's request. The court agrees in part, but only as it pertains to consideration of the specific facts of

6

the case. *See* 981 F.3d at 286. Otherwise, *McCoy*'s pertinent ruling – that an "enormous" or "exceptionally dramatic" length of a sentence together with a "gross" disparity between the sentence imposed before, and a sentence that would be imposed after, a change in the law may constitute an "extraordinary and compelling reason" (*see id.* at 285-86) – is binding on the court with respect to determining whether a sentence reduction is proper under § 3582(c)(1)(A). Such determination must be made on a case-by-case basis. *Id.* at 286 ("We emphasize … that in granting compassionate release, the district courts relied not only on the defendants' [ ] sentences but on full consideration of the defendants' individual circumstances.").

Here, Miller asserts that, at sentencing, he was determined to be a career offender under U.S.S.G. § 4B1.1 and sentenced to a total term of imprisonment of 324 months (240 months on Count Six and 84 months on Count Seven, to run consecutively). His status as a career offender was based on the offense of conviction, Hobbs Act robbery, but the Fourth Circuit determined in 2021 that "Hobbs Act robbery is not a crime of violence under the Sentencing Guidelines career offender provision." *United States v. Green*, 996 F.3d 176, 179 (4th Cir. 2021). Miller contends, therefore, that absent the Chapter 4 enhancement for a career offender, his sentencing range would be "drastically reduced" (i.e., his range of 360 months-Life would drop to 77-96 months based on a total offense level of 22 and a criminal history category of V). The court disagrees and finds that Miller would be, in fact, considered a career offender if sentenced today.

To receive the career offender enhancement, a defendant must be 18 years old at the time of the offense of conviction, which must be a crime of violence or a controlled substance offense, and he must have at least two prior felony convictions of either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a). Miller challenges only the requirement that the offense of conviction be a crime of violence. While Miller points to his Hobbs Act robbery conviction,

7

and is correct that such conviction, itself, no longer qualifies as a crime of violence under the Guidelines' career offender provision pursuant to *Green*, Miller fails to acknowledge that he was also found guilty of aiding and abetting the use or possession of a firearm in furtherance of the robbery in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2, which, arguably, remains a crime of violence. *See United States v. Dewitt*, No. 4:04-cr-00795-TLW-4, 2023 WL 2634497, at *4-*5 (D.S.C. March 24, 2023); *United States v. Threatt*, No. 3:06-cr-00417-FDW, 2023 WL 6466571, at *5 (W.D.N.C. Oct 4, 2023).

That is, the Fourth Circuit has ruled that a Hobbs Act robbery qualifies as a predicate crime of violence for a § 924(c) conviction. *United States v. Mathis*, 932 F.3d 242, 266 (4th Cir. 2019). Its decision in *Green* has no impact on this holding. *Dewitt*, 2023 WL 2634497, at *5; *see also Hallman v. United States*, No. 319CR00007MOCDCK1, 2021 WL 2518218, at *3 (W.D.N.C. June 18, 2021) ("*Green* does not undermine *Mathis*' holding that Hobbs Act robbery is a crime of violence for § 924(c) purposes"). Thus, Miller's "§ 924(c) conviction in connection with his Hobbs Act robbery . . . remains as an independent basis for career offender enhancement." *Threatt*, 2023 WL 6466571, at *5; *see also Dewitt*, 2023 WL 2634497, at *5. Miller would be considered a career offender if sentenced today because he was 44 years old at the time he committed the crime of using or carrying a firearm in furtherance of a Hobbs Act robbery, and he had at least two prior felony convictions of crimes of violence, including conspiracy to commit an armed robbery and assault with a deadly weapon inflicting serious injury. *See* PSR, ¶¶ 34, 35, 70, DE 193.

Notably, even if the court were to find that the career offender enhancement no longer applies, extraordinary and compelling circumstances do not exist supporting a sentence reduction in this case. For example, the crimes for which the jury found Miller guilty were undoubtedly violent. *See United States v. Crumitie*, No. 1:06-cr-271, 2022 WL 1809312, at *4 (M.D.N.C. June

8

2, 2022) ("While Hobbs Act robbery may no longer be a crime of violence for purposes of the [§ 4B1.1] enhancement, the crime [defendant] committed was, in fact, violent—he brandished a firearm, pointed the firearm at the victim, and threatened the victim."). At trial, witness testimony and video evidence of the robbery revealed that Miller and his co-Defendant, Blackwell, were driven by the third co-Defendant, Oxendine, to the convenience store where Blackwell pulled out a gun; Miller and Blackwell entered the store together with the gun drawn and pointed at the cashier; and both men threatened the cashier and demanded money. Order, DE 144 at 16-17.

Moreover, Miller's criminal history is both lengthy, spanning approximately thirty years, and serious, including convictions for assaults with deadly weapons (three of which inflicted serious injuries), possession of a sawed-off shotgun, robberies, breaking and entering, larceny, possession of a shotgun on school premises, and carrying a concealed weapon. *See* PSR, ¶¶ 15-35. The time he spent in custody for these convictions—approximately twenty-one years—failed to deter Miller from committing the instant crimes, at which time he had been on parole (and, apparently, under supervision) for three-and-a-half months.

Unlike here, the defendants in *McCoy* were relatively young (ages 19-25), had excellent institutional records, and had taken substantial steps toward rehabilitation. *McCoy*, 981 F.3d at 286. In this case, Miller has served more than fourteen years of his 27-year sentence, has committed only two infractions during that time, and has been deemed "outstanding" in his current work assignment. DE 220-3. However, the BOP also characterizes Miller as "a High Risk Recidivism inmate, who is FTC ineligible due to the nature of his crime" and who "has FSA needs identified in the areas of Anger/Hostility, Cognitions, Education, Medical, Rec/Leisure/Fitness, Substance Abuse, and Work." DE 220-3. Considering Miller's story as a whole, the court finds

9

he fails to demonstrate his career offender status, or any lack thereof, constitutes an extraordinary and compelling reason supporting a sentence reduction.

Miller also argues that, in light of the Supreme Court's opinion in *Alleyne v. United States*, 570 U.S. 99 (2013), his sentence imposed on the § 924(c) conviction should be reduced from 84 months to 60 months. In *Alleyne*, the Court ruled that "[b]ecause the finding of brandishing increased the penalty to which the defendant was subjected, it was an element, which had to be found by the jury beyond a reasonable doubt." 570 U.S. at 117. In this case, whether the firearm was brandished was not an element presented to the jury for a finding. *See* DE 118. Thus, if Miller were sentenced today, based on a conviction that did not include brandishing as an element, he would be subject to the 60-month minimum statutory sentence. But, just because the district court imposed what it determined to be the minimum sentence in 2010 does not mean the court would impose a 60-month sentence today for the same crime. *See United States v. Mitchell*, No. 8:11-cr-525-PJM, 2024 WL 129761, at *3 (D. Md. Jan. 11, 2024) ("While a within-guidelines sentence today would be significantly shorter than what Mitchell agreed to, that is "only one possible hypothetical result.") (quoting *Crumitie*, 2022 WL 1809312, at *4). Here, as in *Mitchell*, "given [Miller]'s criminal history and the nature of the crime he committed, the Government and/or the court may have deemed an upward variance appropriate." *Id.* Additionally, it is entirely possible that he would have received an *Alleyne* instruction, were his case tried post-*Alleyne*. Furthermore, even if it would consider reducing Miller's 924(c) sentence to the 60-month minimum, the court finds that a 24-month difference is neither "exceptionally dramatic" in length nor "grossly" disparate from the original sentence. *See McCoy*, 981 F.3d at 285-86. The court finds no extraordinary and compelling reason to reduce Miller's sentence in this regard.

10

Finally, Miller argues that he "has served several years of his sentence under the extraordinary circumstances of a deadly global pandemic." DE 220 at 6. To the extent that Miller contends his risk of serious harm from potential exposure to COVID-19 supports a sentence reduction, the court disagrees. "COVID-19 raises medical issues in the prison context that are particularly serious." *High*, 997 F.3d at 185. "The underlying arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." *Id.* In addition, "actually contracting COVID-19 can also provide a compelling case for relief if coupled with a prison's inability to address the condition and circumstances calling for compassion." *Id.* "When considering a defendant's motion for compassionate release, a district court must "set forth enough to satisfy our court that it has considered the parties' arguments and has a reasoned basis for exercising its own legal decisionmaking authority, so as to allow for meaningful appellate review." *Id.* at 190 (citation, internal quotation marks, and brackets omitted).

This court concludes that Miller has not established an extraordinary and compelling reason why a reduction in his sentence is warranted in this case based on risks to his health. In the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when "an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023) (citing *Hargrove*, 30 F.4th at 196). Miller is a fifty-nine-year-old man who identifies no health issues. *See* DE 220 at 6. According to the Centers for Disease Control ("CDC"), certain underlying medical conditions may cause a person to be more likely to develop a severe illness from the coronavirus. *See Understanding Risk*, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/your-health/understanding-risk.html (last visited February 5, 2024). Also, "older" adults (65 and older) and people who have difficulty getting health care, including "people from racial and ethnic minority groups," are more likely to get very sick or die from COVID-19. *Id.*

First, Miller is older than most inmates but not "65 or older," and he fails to specify any medical condition that may cause a risk of becoming significantly ill if he contracted the COVID-19 virus. As for the virus itself, the record indicates that Miller was fully immunized as of December 14, 2021. DE 224. Also, Miller makes no argument that his health is at risk at his current facility, FCI Coleman; rather, he asserts that "inmate programming and services are at limited capacity." DE 220 at 6. Thus, even if the court were to find Miller had demonstrated he has "a particularized susceptibility to" COVID-19, he fails to demonstrate "a particularized risk of contracting the disease at his specific prison facility." *See Brown*, 78 F.4th at 128.

The court notes that this failure may be, in part, due to the changed circumstances since the height of the COVID-19 pandemic. As of this writing, the global coronavirus pandemic has been ongoing for four years. Much has been learned during this time and most significantly, several different vaccines have been developed, approved by the Food and Drug Administration, and distributed across the country (and world), including to prison facilities. *COVID-19 Vaccines*, U.S. Food & Drug Admin., https://www.fda.gov/emergency-preparedness-and-response/coronavirus-disease-2019-covid-19/covid-19-vaccines#news (last visited February 5, 2024). While the risk of contracting COVID-19 still exists, that risk has been significantly diminished for Miller and other vaccinated federal inmates. Furthermore, Miller has not shown that conditions at FCI Coleman are particularly risky or that the facility is unable to monitor and

adequately treat any medical conditions. The court finds that Miller has not demonstrated that any risk to his health constitutes an extraordinary and compelling reason for a reduction of his sentence.

In sum, the court finds that Miller fails to establish an extraordinary and compelling reason to grant him compassionate release at this time.

B. Consideration of the § 3553(a) Factors

The court finds that consideration of the factors set forth in 18 U.S.C. § 3553(a) also weighs against granting Miller's motion. Section 3553(a) requires that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining whether such purposes have been fulfilled with respect to the present motion, the court should consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a); *see also Jenkins*, 22 F.4th at 170.

Here, Miller concedes the seriousness of his offense conduct. He contends, however, that his co-Defendant, Blackwell, was the more culpable participant "who carried the gun in the robbery, pointed it at the clerk, threatened the store employees, and stole the money," but Miller received "a sentence more than twice what Blackwell received." DE 220 at 4-5. Miller cites the presentence investigation report for his contention describing Blackwell's culpability; the court notes, however, that the Fourth Circuit found the evidence presented at trial "of Miller's guilt was overwhelming" and describes both witness testimony and the video, "which showed Miller and

13

Blackwell together entering the store with a gun drawn and pointed at [the cashier], repeatedly threatening [the cashier], and demanding money." Order, DE 144 at 16. The jury found Miller guilty of both crimes for which he was charged, and the Fourth Circuit affirmed the conviction. *See id.* Moreover, other than the crime committed, Blackwell's and Miller's circumstances at the time of Miller's sentencing were not similar.

As for Miller's history and characteristics, as noted above, Miller has served more than fourteen years on his sentence and committed only two infractions during that time; he also has received recognition as an outstanding employee and has completed a number of programs. The court commends Miller for his efforts in this respect and encourages him to continue on this beneficial path.[3] However, such efforts are not "extraordinary" for purposes of this analysis. "[I]t appears to the court that, at best, [Miller] has simply done the things that prisoners are supposed to do while incarcerated." *United States v. Davis*, 581 F. Supp. 3d 759, 771 (E.D. Va. 2022) (citation, internal quotation marks, and brackets omitted). Miller's lengthy criminal history, set forth above, describes an individual who has repeatedly broken the law, particularly in harming (or attempting to harm) others despite institutional interventions. This conduct reflects Miller's lack of consideration for the lives and well-being of others, as well as his utter disrespect for the law. The court finds that Miller's history and offense conduct strongly implicate the need for a sentence "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

On March 9, 2010, Judge Howard sentenced Miller to a total of 324 months in prison, 240 months on Count Six and 84 months on Count 7 (J., DE 129), well below the bottom of the Chapter

---

[3] The court hopes that Miller commits to being and remaining a law-abiding citizen regardless of the court's decision on this matter.

14

4 sentencing range of 360 months-Life.[4] Miller lodged no objection to the sentence computation. *See* PSR at 17, DE 193; *see also* Tr. 7: 24 (at the sentencing hearing, defense counsel expressed his "understanding" that Miller was "a career offender"). At this time, Miller has served only fourteen years of a 27-year sentence; at the time he committed the instant offense, he had previously served approximately twenty-one years in prison and had repeatedly offended while under supervision. *See* DE 223 at 22-26 (describing in detail Miller's criminal history). The court has fully considered the § 3553(a) factors and concludes that the purposes of Miller's sentence remain unfulfilled.

## IV. Conclusion

The court finds that Miller has failed to demonstrate an extraordinary and compelling reason to warrant this court exercising its discretion to grant a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A). Moreover, while Miller asserts he has enriched himself by working and taking educational classes while incarcerated, and has family support and a potential home if he were released, Miller was found guilty of aiding and abetting an armed robbery. This conduct, and Miller's history as a career offender, resulted in a 324-month prison sentence, for which Miller has not yet fulfilled the purposes set forth in 18 U.S.C. § 3553(a).

For these reasons, Miller's motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A) [DE 219] is DENIED.

SO ORDERED this __6th__ day of February, 2024.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Judge Howard was constrained by the mandatory maximum sentence for Count Six, but Count Seven carried a sentence of 84 months to Life. *See* Tr. 4: 16-23.

15